1  DANIEL J. BERGESON, SBN 105439
   dbergeson@be-law.com
2  DONALD P. GALIARDI, SBN 138979
   dgagliardi@be-law.com
3  ELIZABETH D. LEAR, SBN 122922
   elear@be-law.com
4  BERGESON, LLP
   303 Almaden Boulevard, Suite 500
5  San Jose, CA 95110-2712
   Telephone:  (408) 291-6200
6  Facsimile:   (408) 297-6000

7  Attorneys for Defendant,
   MARK BENNING

8

9              UNITED STATES DISTRICT COURT

10           NORTHERN DISTRICT OF CALIFORNIA

11                 SAN JOSE DIVISION

12

| | |
|---|---|
| 13  FEDERAL TRADE COMMISSION, | Case No. C09 03814 RS |
| 14                          Plaintiff, | **REPLY BRIEF IN SUPPORT OF MARK BENNING'S MOTION TO DISMISS COMPLAINT** |
| 15        vs. | |
| 16  SWISH MARKETING, INC., a corporation; MARK BENNING, individually and as an officer | Date:        February 10, 2010 |
| 17  of SWISH MARKETING, INC.; MATTHEW PATTERSON, individually and as an officer of | Time:        9:30 a.m. |
| 18  SWISH MARKETING, INC.; and JASON STROBER, individually and as an officer of | Courtroom:    4, 5th Floor |
| 19  SWISH MARKETING, INC., | Hon. Richard Seeborg, U.S. District Judge |
| 20                          Defendants. | Complaint Filed:  August 19, 2009 |
| 21 | Trial Date:        Not Set |

22

23

24

25

26

27

28

1    Defendant Mark Benning ("Benning") respectfully submits this reply brief in support of

2  his motion to dismiss the Complaint brought by plaintiff Federal Trade Commission ("FTC").

3  **I.      INTRODUCTION AND SUMMARY OF ARGUMENT**

4    ***The FTC relies entirely on naked and vague assertions which . . . indicts***

5    ***Benning entirely and solely for his former* status *as chief executive officer of [defendant] Swish.***

6  (Motion, at p.12; *see also id.*, at p.11) (Docket No. 41) (emphasis added).  The preceding sentence

7  is the distillation of Benning's motion to dismiss in the original moving papers.  The point is

8  undeniable from any reasonable reading of the FTC's barebones Complaint.  And the point is

9  *expressly underscored by the FTC itself* in its opposition papers:

10    The Complaint . . . makes specific factual allegations as to defendant Benning.  It
      states that defendant Benning, during the times alleged in the complaint, was the

11    CEO of the corporate defendant [Swish].   [Complaint], ¶ 8.   Furthermore, it
      alleges that, 'acting alone ***OR*** in concert with others, he has formulated, directed,

12    controlled, had the authority to control, ***OR*** participated in the acts and practices
      of (the corporate defendant), including the acts and practices set forth in this

13    Complaint.' *Id.*

14  (Opposition Brief, at pp. 2-3) (emphasis added).  In other words, the FTC, despite a lengthy pre-

15  suit investigation, really doesn't know (or at least does not care to say) what Benning did ***OR*** did

16  not (but "had the authority to") do; yet since he was formerly Swish's CEO, therefore, the FTC

17  contends, it can bring him into Court and bring to bear the full weight of federal executive

18  authority.  A CEO, of course, has the "authority to" control certain acts or practices within his

19  corporation.  As a matter of law, this does not – and cannot for the sake of our republic – in itself

20  render a CEO legally liable for corporate misconduct.  However, in a nutshell, that is precisely the

21  argument that the FTC is advancing in opposing Benning's motion to dismiss.

22    As discussed below, the FTC's Complaint *sounds in fraud* against Benning.  Accordingly,

23  the allegations against Benning must be particularly pled in accordance with Rule 9(b) of the

24  Federal Rules of Civil Procedure.

25    Even if Rule 9(b) is inapplicable, nevertheless the FTC's Complaint certainly cannot

26  satisfy Rule 8.  As the Supreme Court has repeatedly opined:  "A pleading that offers 'labels and

27  conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'"  *Ashcroft*

28  *v. Iqbal,* 129 S. Ct. 1937, 1949 (2009), *quoting, Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555

- 1 -

1    (2007). Yet, that is precisely what the FTC has offered in this case against Benning.

2    As discussed more fully below, the FTC's Complaint against Benning "will not do," and

3    accordingly should be dismissed as non-compliant with Rule 8 if not also Rule 9(b).

4 **II.**     **ARGUMENT**

5      **A.**     **The Allegations in the Complaint Against Mark Benning "Sound in Fraud" Yet Have NOT Been Particularly Pled in Compliance with Rule 9(b).**

6

7    The FTC contends that "[a]n allegation of deception under the FTC Act is not a claim of

8    fraud. Neither Section 5 of the FTC Act nor the complaint mention 'fraud,' and the elements of a

9    Section 5 action under a deception theory are not synonymous with those of fraud." (Opposition,

10    at p.4). This contention is uncontested and immaterial. The FTC concludes, "[t]herefore, Rule

11    9(b) does not apply." (*Id.*) This conclusion is misguided under Ninth Circuit law.

12    In the Ninth Circuit, at least, a claim for relief need not contain all of the elements of a

13    common law fraud cause of action, or in other words need not be "synonymous" with fraud, to be

14    subject to the requirements of Rule 9(b). As mentioned in the moving papers:

15      Rule 9(b) applies when (1) a complaint specifically alleges fraud as an essential
16      element of a claim, (2), when the claim 'sounds in fraud' by alleging that the
     defendant engaged in fraudulent conduct, but the claim itself does not contain
17      fraud as an essential element, and (3) to any allegations of fraudulent conduct,
     even when none of the claims in the complaint 'sound in fraud.'

18    (Motion, at p.9, *citing, Davis v. Chase Bank U.S.A., N. A.,* 650 F. Supp. 2d 1073, 1089-90 (C.D.

19    Cal. 2009), *citing, Vess v. Ciba-Geigy Corp.* USA, 317 F.3d 1097, 1102-06 (9th Cir. 2003).

20    Although the FTC has asserted a claim under Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), its

21    right to redress exists under Section 13(b) of the FTC Act, 15 U.S.C. § 53(b). (Complaint, ¶ 35).

22    "The type of activity for which a defendant will be liable for redress under Section 13(b) must rise

23    to the level of ***dishonesty or fraud***." *F.T.C. v. Int'l Diamond Corp.*, No. C-82-0878 WAI (JSB),

24    1983 WL 1911 at *3 (N.D. Cal. Nov. 8, 1983) (emphasis added). Accordingly, the FTC's suit

25    against Benning necessarily "sounds in fraud" and must be pled particularly pursuant to Rule 9(b).

26    To understand the Ninth Circuit's reading of Rule 9(b), it is helpful to consider an example

27    of the rule's application by the Ninth Circuit to statutory (*i.e.,* non-common law fraud) California

28    state law claims:

The CLRA [California Consumer Legal Remedies Act, Cal. Civil Code §§ 1750-1784] prohibits 'unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale . . . of goods or services to any consumer. [citation]  The UCL [California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 – 17210] prohibits 'unlawful, unfair or fraudulent business act(s) or practice(s)' and 'unfair, deceptive, untrue or misleading advertising.'  [citation].  Rule 9(b)'s particularity requirement applies to these state-law causes of action.  *Vess*, 317 F.3d at 1102-05.  In fact, we have specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL.  *Id.*

*Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).  The Ninth Circuit observed in *Kearns* that "[w]hile fraud is not a necessary element of a claim under the CLRA and UCL, a plaintiff may nonetheless allege that the defendant engaged in fraudulent conduct.  A plaintiff may alleged a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of that claim.  In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading . . . as a whole must satisfy the particularity requirement of Rule 9(b)." *Id.*[1]  In *Kearns,* the Ninth Circuit expressly found that the plaintiff's complaint "alleges a unified course of fraudulent conduct, namely that [defendant] and its 'co-conspirator' dealerships knowingly ***misrepresent to the public*** that [its] vehicles are safer and more reliable, with an intent to induce reliance and defraud consumers," and upheld its dismissal by the district court pursuant to Rule 9(b).  *Id.*, at 1127 (emphasis added).

Obviously, one species of the state law § 17200 unfair competition claim bears a striking resemblance to a claim under Section 5(a) of the FTC Act.  Both impose statutory liability for deception of consumers.  The Ninth Circuit has held that a California state law claim for deceiving consumers "sounds in fraud" and must therefore be pled with particularity under Rule 9(b).  *Kearns,* 567 F.3d at 1125.  Surely the same reasoning applies to a federal claim brought by the FTC for deceiving consumers;[2] federal agencies enjoy no sovereign immunity from the application

---

[1]    The FTC has misplaced reliance on *Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082 (N.D. Cal. 2006), in which Judge Patel held that "Rule 9(b) is not strictly applicable to the current action as the CLRA is not a fraud statute."  *Id.* at 1097.  (*See*, Opposition, at p.6 n.2).  The Ninth Circuit's subsequent ruling in *Kearns* makes clear that the CLRA, though not a fraud statute as Judge Patel correctly observes, is nevertheless subject to Rule 9(b) because a claim thereunder sounds in fraud.

of Rule 9(b).  *E.g., United States v. Hempfling*, No. 105CV00594 DWWSMS, 2005 WL 2334713

(E.D. Cal. Sept. 23, 2005) (granting motion to dismiss Department of Justice complaint under 26

U.S.C. § 6700 for failure to comply with Rule 9(b).)

While the Ninth Circuit has applied Rule 9(b) to a highly analogous state law claim which

though not synonymous with fraud nonetheless sounds in fraud, the FTC has been unable to cite a

single Ninth Circuit decision, or a decision of any district court within the Ninth Circuit, holding

that a claim under Section 5(a) of the FTC Act escapes the ambit of Rule 9(b).  Despite a diligent

search, we likewise have been unable to find any such decision.

District court decisions from other jurisdictions, cited in the moving papers, "all have their

genesis in the unpublished – and unreasoned – perfunctory opinion by the district court in" *F.T.C.

v. Communidyne, Inc.*, No. 93 C 6043, 1993 WL 558754, at *2 (N.D. Ill. Dec. 3, 1993).  (Motion,

at p.10 n.1).  As mentioned, this Court "should reject *Communidyne* and its progeny as wrongly

decided" and as inconsistent with controlling Ninth Circuit law.  (*Id.*)

*Communidyne* is a three-page (on Westlaw), unpublished decision from the Northern

District of Illinois pre-dating the Ninth Circuit's rulings in *Vess* and *Kearns*.  The district court's

ruling on the inapplicability of Rule 9(b) to a Section 5(a) claim is quite brief and can be

summarized as follows:  "A claim under section 5(a) of the FTC Act is not a claim of fraud . . ."

because the elements of the statutory claim are not synonymous with the elements of common law

fraud.  1993 WL 558754, at *2 ("There is no scienter or reliance requirement, as would be

required to prove fraud.").[3]  The *Communidyne* ruling contains no discussion whatsoever whether

a Section 5(a) claim "sounds in fraud" or is "grounded in fraud," a key part of the analysis under

---

[2]     The FTC concedes that it is useful to look at the application *vel non* of Rule 9(b) in
analogous circumstances:  "Courts have not applied Rule 9(b) to cases brought under other
statutes that, like the FTC Act, prohibit a broad range of deceptive practices when a plaintiff has
alleged only the element of deception as the basis for its claim."  (Opposition, at p.5 n.1, citing
decisions from outside the Ninth Circuit).  Of course, the difference between the FTC's analogies
and ours is that Benning analogizes to controlling case law within this judicial circuit respecting a
nearly synonymous local state statute, whereas the FTC takes its examples from places like
Nebraska.

[3]     Subsequent decisions have simply parroted the *Communidyne* ruling or its progeny without
supplying any independent analysis to augment the superficial reasoning in the original decision.
*See, e.g., F.T.C. v. SkyBiz.com*, No. 01-CV-396-K(E), 2001 WL 1673649 (N.D. Okla. Aug. 2,

REPLY BRIEF IN SUPPORT OF MARK BENNING'S MOTION TO DISMISS COMPLAINT
Case No. C09 03814 RS

1    Ninth Circuit jurisprudence.

2    Not only does the Ninth Circuit's interpretation of Rule 9(b) differ, but the Ninth Circuit's

3    reading of Section 5(a) of the FTC Act differs as well:

4    Some courts, including district courts in this circuit, have held that . . . the FTC
     must also show [the defendant corporate officer] had **knowledge** that the
5    corporation or one of its agents engaged in dishonest or **fraudulent** conduct, that
     the misrepresentations were the type upon which a reasonable and prudent person
6    **would rely**, and that consumer injury resulted.

7    *F.T.C. v. Publishing Clearing House, Inc*. 104 F.3d 1168, 1171 (9th Cir. 1996) (emphasis added).

8    "To satisfy the knowledge requirement, the FTC must show . . . [the corporate official] **had actual**

9    **knowledge** of material misrepresentations, **(was) recklessly indifferent to the truth** or falsity of a

10   misrepresentation, or **had an awareness of a high probability of fraud** along with an **intentional**

11   **avoidance of the truth**.  However the FTC is not required to show that a defendant *intended* to

12   defraud consumers in order to hold the individual personally liable." *Id.*  (bolded emphasis added;

13   citations omitted).  In other words, there is indeed a mental-state requirement for Section 5(a) of

14   the FTC Act, at least in the Ninth Circuit (and undoubtedly under due process).  The scienter

15   required to impose liability is different and arguably more relaxed than under a common law fraud

16   claim but it is hardly nonexistent.[4]

17   Likewise, there is a reliance element to a Section 5(a) claim, even though not synonymous

18   with the reliance element of a common law fraud claim.  The deception must be of "the type upon

19   _____

20   2001) ("Defendants contend that the FTC was required under Rule 9(b) F.R.Cv.P. to plead with
     particularity its factual allegations . . . The Court disagrees.  'A claim under section 5(a) of the
     FTC Act is not a claim of fraud or mistake, so Rule 9(b) does not apply.' [citing
21   *Communidyne*]."); *see also, F.T.C. v. Freecom Communications, Inc*., 401 F.3d 1192, 1204 n.7
     (10th Cir. 2005) (citing *SkyBiz.com*); *F.T.C. v. Innovative Marketing, Inc*., 654 F.Supp.2d 378, 388
22   (D.Md. 2009) (citing *Freecom Communications*); *F.T.C. v. National Testing Services, LLC,* No.
     3:05-0613, 2005 WL 2000634, at *2 (M.D.Tenn. Aug. 18, 2005) (also citing *Freecom*).  Such
23   decisions are neither controlling nor persuasive.

24   [4]    Analogously, *intent* to defraud is obviously *not* a requisite for a *negligent*
     misrepresentation claim; yet such a claim must be pled particularly under Rule 9(b).  *E.g.,*
25   *Meridian Project Systems, Inc. v. Hardin Construction Co., LLC* 404 F. Supp. 2d 1214, 1219 n.5
     (E.D. Cal 2005).  Similarly, "the requirements of the rule have also been found to apply to suits
26   based on the False Claims Act, 31 U.S.C. 3729 et seq. (1988), even though violation of that Act
     may be established by evidence that claims were submitted merely 'in *reckless* disregard of the
27   truth or falsity of the of the information' and *specific intent to defraud is not required*."  *Toner v.
     Allstate Ins. Co*., 821 F. Supp. 276, 283 (D. Del. 1993) (emphasis added).

28

REPLY BRIEF IN SUPPORT OF MARK BENNING'S MOTION TO DISMISS COMPLAINT
Case No. C09 03814 RS

which a reasonable and prudent person *would rely.*" *Publishing Clearing House, Inc.* 104 F.3d at

1171 (emphasis added). Logically, because it is essential that "consumer injury [have] resulted,"

*id.*, *reliance is implicit*; otherwise, there is no nexus between the deception and the resulting

injury. As explained by the Ninth Circuit:

> It is well established with regard to Section 13 of the FTC Act (which gives district courts the power to order equitable relief) that proof of individual reliance by each purchasing customer is not needed.
>
> Proof of reliance by the consumer upon the defendants' misrepresentations is a traditional element of recovery under common law fraud actions. Section 13 of the FTC Act differs from a *private* suit for fraud, however. Section 13 serves a *public* purpose by authorizing the Commission to seek redress on behalf of injured consumers. Requiring proof of subjective reliance by each individual consumer would thwart effective prosecutions of large consumer redress actions and frustrate the statutory goals of the section.
>
> [citations] *A presumption of actual reliance arises* once the Commission has proved that the defendant made material misrepresentations, that they were widely disseminated, and that consumers purchased the defendant's product.

*F.T.C. v. Figgie International, Inc.,* 994 F.2d 595, 605-06 (9th Cir. 1993) (emphasis added). Thus,

a Section 5(a) claim against a corporate official like Benning, while not synonymous with

common law fraud, nevertheless "sounds in fraud."

Moreover, the purposes of Rule 9(b) are best served by a finding that the rule encompasses

a claim under § 5(a) of the FTC Act. "Rule 9(b) serves three purposes: (1) to provide defendants

with adequate notice to allow them to defend the charge and deter plaintiffs from filing complaints

'as a pretext for the discovery of unknown wrongs'; (2) to protect those whose reputation would

be harmed as a result of being subject to fraud charges; and (3) to 'prohibit [] plaintiff[s] from

unilaterally imposing upon the court, the parties and society enormous social and economic costs

absent some factual basis.'" *Kearns,* 567 F.3d at 1125, *quoting In re Stac Electronics, Sec. Litig.,*

89 F.3d 1399, 1405 (9th Cir. 1996). All three of these purposes are served by applying the rule

here.

First, Benning has had inadequate notice of the charge against him. He is alleged to have

done something *OR* not; to have "formulated, directed [*OR*] controlled" something he didn't do (if

he didn't do it), *OR*, at the very least by virtue of the fact he is the former CEO of defendant

Swish, he "had the *authority* to control" the things he did not do, did not formulate *OR actually*

1  control.  (See, Complaint, ¶ 8).  Plainly the wrong ascribed to Benning is unknown to the FTC,

2  which evidently hopes to "discover" one in the course of the litigation.

3          Second, Benning's reputation is severely harmed by the charge against him in a federal

4  lawsuit brought by a government agency, even though the word "fraud" is not intoned.  The public

5  is not likely to draw a lawyerly distinction, nor should they, between common law fraud and

6  deception causing consumer injury.  Indeed, there is a colloquial term for the subject matter of

7  Section 5(a) of the FTC Act, which the FTC itself bandies around before Congress when not

8  directly confronted with Rule 9(b):  "fraud."[5]  The absence of express allegations that Benning

9  intended to defraud consumers or that consumers directly relied on the alleged deception does not

10 mean that the charge is not implicit – or that some form of scienter and reliance must be shown to

11 sustain the charge under Ninth Circuit law.  *See, Publishing Clearing House, Inc.*, 104 F.3d at

12 1171.  By virtue of this lawsuit, Benning's good name is being dragged through the mud just as

13 certainly as if the FTC had used the word fraud in its Complaint.

14         Third, the FTC, by charging Benning with consumer fraud without any apparent basis

15 other than that he used to be CEO of Swish, imposes upon this Court, upon Benning in particular,

16 and upon the nation's taxpayers more generally, enormous unnecessary costs.[6]

17         Plainly, the purposes of Rule 9(b) are best served by its application in this case and just as

18 plainly the FTC's current Complaint does not satisfy the requisites of the rule.  Accordingly,

19 Benning's motion to dismiss should be granted.

20    **B.      The Allegations in the Complaint Against Mark Benning do NOT Satisfy the
              Requisites of Rule 8 as Amplified by The Supreme Court's *Iqbal* Decision.**

21

22         The FTC argues:

23         To survive a motion to dismiss, a complaint need only allege 'enough facts to
           state a claim for relief that is plausible on its face.' *Twombly,* 555 U.S. at 570. . .

24         . The complaint alleges a plausible claim against defendant Benning, in

25  [5]      *See,* Prepared Statement of the Federal Trade Commission to House Select Committee on
        Energy and Commerce, Subcommittee on Commerce Trade, and Consumer Protection, July 8,
26      2009, at p.4 (describing violators of the FTC Act as **"fraudsters."** (Docket No. 34-4, at p.6 of 19).

27  [6]      Costs associated with suing Benning should be balanced against the illusory benefits.  An
        injunction against Swish's *former* CEO, who is not in a position for recidivism, is probably
28      worthless.  Similarly, Benning is likely judgment-proof to pay a penalty.  The exercise is idle.

1

2

3

> particular for these violations of the FTC Act.  In addition to describing in detail how the defendants deceived consumers on their publicly available websites, the complaint alleges that Benning was the CEO of the corporate defendant and that he formulated, directed, controlled, had the authority to control, **OR** participated in the deceptive practices, which the complaint describes in detail.

4   (Opposition, at pp. 9-10) (emphasis added; citation omitted)  The FTC's argument in this regard is

5   (conveniently) superficial and incomplete.

6          First, as a general matter, the FTC's complaint against Benning is improperly reliant on

7   boilerplate, which is no longer allowed to satisfy Rule 8.  As mentioned, the U.S. Supreme Court

8   has recently held:  "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the

9   elements of a cause of action will not do.'"  *Iqbal,* 129 S. Ct. at 1949, *quoting, Twombly*, 550 U.S.

10  at 555.

11         Second, and more specifically, Rule 8, in the *Twombly* and *Iqbal* era, requires that a claim

12  for violation of Section 5(a) of the FTC Act against a corporate official ***plead factual context*** from

13  which the Court "is able to infer that he [the official] was ***aware of and complicit in***, the

14  Enterprise's unlawful conduct."  *F.T.C. v. Innovative Marketing, Inc*., 654 F. Supp. 2d 378, 388

15  n.3 (D.Md. 2009) (emphasis added)  In *Innovative Marketing, Inc*., the district court was able to

16  infer this from context whereby "the allegations describing the mechanics of the Enterprise's

17  scheme reveal the critical importance of the Enterprise's relationship with payment processors.

18  Because [the officer] ***personally oversaw*** and nurtured these relationships," the Court felt able to

19  make the inference.  *Id.* (emphasis added).  Here, by contrast, there are no factual allegations

20  establishing that Benning "personally oversaw" any part of the scheme, merely a formulaic

21  recitation that he "had the authority" to do so in his former capacity as CEO.

22         In short, the only fact alleged against Benning is that he used to be CEO of defendant

23  Swish.  This "will not do" under Rule 8 (as well as Rule 9(b).)  *Iqbal,* 129 S. Ct. at 1949, *quoting,*

24  *Twombly*, 550 U.S. at 555.  Therefore, the Complaint against Benning should be dismissed.

25  **III.    CONCLUSION**

26         For the foregoing reasons, and as set forth in the original moving papers, defendant Mark

27  Benning respectfully requests that the FTC's Complaint as against him be dismissed pursuant to

28  Fed.R.Civ.P. 9(b), or alternatively Rule 8(a), as well as Rule 12(b)(6) for failure to state a claim

- 8 -

1 | against him on which relief may be granted.

2 | Dated:  January 26, 2010                    BERGESON, LLP

3 |

4 |                                             By:  _____/s/_____

5 |                                                  Donald P. Gagliardi

6 |                                             Attorneys for Defendant
     MARK BENNING

7 |

8 |

9 |

10 |

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

REPLY BRIEF IN SUPPORT OF MARK BENNING'S MOTION TO DISMISS COMPLAINT
Case No. C09 03814 RS