**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

FEDERAL TRADE COMMISSION,

        Plaintiff,

v.

SWISH MARKETING, MARK BENNING, et al.,

        Defendants.

_____/

No. C 09-03814 RS

**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND AND DENYING MOTION TO STRIKE**

## I. INTRODUCTION

Defendant Mark Benning moves to dismiss the FTC's Complaint pursuant to Rules 8(a)(2), 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. Defendant Swish Marketing ("Swish") argues this Court is not authorized under section 13(b) of the FTC Act, 15 U.S.C. § 53(b) (1994), to award restitution and moves to strike from the Complaint any reference to ancillary monetary relief.

As to his motion to dismiss, Benning contends that the FTC's allegations "sound in fraud" and therefore must be pleaded with particularity under Rule 9(b). In the alternative, Benning claims that the FTC's pleadings do not even comprise a "short and plain statement . . . showing the pleader is entitled to relief" as required by Rule 8(a)(2) and should be dismissed on that separate basis. Because the Commission's averments that Benning participated in and had knowledge of Swish Marketing's material omissions and misrepresentations satisfy neither Rule 8(a)(2) nor 9(b),

1  defendant Benning's motion to dismiss must be granted with leave to amend. As to Swish's motion
2  to strike, to grant it this Court would have to ignore an on-point holding from the Ninth Circuit. In
3  *FTC v. H.N. Singer, Inc.*, 668 F.2d 1107 (9th Cir. 1982), the Court reasoned that Congress vested
4  the district court with equitable jurisdiction under section 13(b) to award full relief, including
5  restitution. Swish's argument, while interesting and well-presented, does not warrant abandonment
6  by this Court of binding Circuit precedent. The motion to strike therefore must be denied.

## II. RELEVANT FACTS

The Federal Trade Commission ("FTC" or "Commission") alleges that Swish and three of its officers violated section 5 of the FTC Act, 15 U.S.C. § 45 (2006), in connection with the advertisement and sale of financial services over the Internet. Between at least September of 2006 and 2007, Swish operated websites that offered short-term, high-interest loans. The FTC describes how Swish failed to disclose to consumers that, when they applied for a loan advertised on one of Swish's websites, they sometimes also unwittingly agreed to purchase a pre-paid debit card sold by a marketing affiliate, VirtualWorks, LLC. According to the Complaint, Swish transferred bank account information released by consumers to facilitate their loans directly to VirtualWorks. That entity then used the information to deduct sufficient funds to "pay" for the debit cards.

The FTC insists that Swish and VirtualWorks collaborated in the debit card scheme: Swish hosted the websites that advertised the loans, had some control over presentation and accessibility to the public, and earned money each time a consumer accepted the debit card offer. Swish admits it displayed the advertisements on its websites but counters that VirtualWorks prepared all text relating to the debit card offer and denies any monetary remuneration directly from consumers.

## III. DISCUSSION

A. <u>Federal Rule of Civil Procedure 9(b).</u>

Federal Rule of Civil Procedure 9(b) provides that "[i]n allegations of fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To satisfy the rule, a plaintiff must allege the "who, what, where, when, and how" of the charged misconduct.

*Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). In other words, "the circumstances constituting the alleged fraud must be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba-Geigy Corp. U.S.A.*, 317 F.3d 1097, 1106 (9th Cir. 2003). By contrast, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. Pro. 9(b). Where the complaint alleges corporate fraud but ascribes liability to individuals, "the allegations should include the misrepresentations themselves with particularity and, where possible, the roles of the individual defendants in the misrepresentations." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).

In the Ninth Circuit, Rule 9(b) applies where a complaint "sounds" or is "grounded" in fraud. *Vess*, 317 F.3d at 1103. This is true where a complaint alleges fraud as an essential element of the claim for relief or where fraud is *not* a necessary element but the plaintiff alleges what amounts to fraudulent conduct. *Id.* at 1103-04 (noting that a complaint sounds in fraud where a plaintiff alleges a "unified" course of fraudulent conduct or, instead, alleges some fraudulent and some non-fraudulent conduct; in the latter case, Rule 9(b) applies only to the fraudulent conduct). While the standard is somewhat difficult to apply, the rationale behind it rests on the preference for substance over form: where a complaint alleges conduct which in effect amounts to fraud, defendants are entitled for policy reasons to the enhanced reliability and notice that accompany more detailed pleadings. *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001).

Section 5(a) of the FTC Act prohibits "unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45 (2006). The FTC argues its Complaint is not subject to Rule 9(b) because "[a] claim that the defendants violated section 5 by engaging in 'deceptive acts and practices' is not a claim of fraud." Fraud, the Commission correctly points out, is not a necessary element under the Act. The Commission further asserts that allegations must actually "add up" or "amount," element by element, to fraud to satisfy the "sounding" standard.

The Commission relies on cases within this Circuit applying Rule 9(b) in the context of the Securities Exchange Act. *See, e.g.*, *In re Charles Schwab*, 257 F.R.D. 534, 545 (N.D. Cal. 2009).

Typically, these cases involved fact patterns where a complaint relied on the same facts to prove a violation of section 10(b) (where fraud is a necessary element) and section 11 (where fraud is not). *See, e.g.*, *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1404-05 (9th Cir. 1996); *In re Daou Systs., Inc.*, 411 F.3d 1006, 1027 (9th Cir. 2005). The facts, then, did not merely "sound" in fraud; they comprised it. When courts in the securities context have not applied Rule 9(b) to section 11 allegations, the rationale has been that the section holds defendants strictly liable for even innocent or negligent material misrepresentations. Thus, where the SEC *alleges* only an innocent or negligent act, it need not plead with particularity facts that have no resemblance to fraud. *See Charles Schwab*, 257 F.R.D. at 545 (finding 9(b) inapplicable to "pure" section 11 claim).

By contrast, courts in this circuit have required heightened pleading even where a plaintiff neither needed to prove nor alleged all elements of common law fraud. *See, e.g.*, *Asis Internet Services v. Subscriberbase, Inc.*, No. 09-3503, slip op. at *3 (N.D. Cal. Dec. 04, 2009) (acknowledging that plaintiffs could not make out all elements of common law fraud but requiring that they satisfy Rule 9(b)'s heightened requirements where allegations under California's False Advertising Law were nonetheless "grounded in fraud"); *In re Actimmune Mktg.*, No. 08-02376, slip op. at *8 (N.D. Cal. Nov. 6, 2009) (finding that even though plaintiff's fraudulent business practices claim under the UCL did not require a showing of actual fraud, it still "sounded" in it). Similarly, the D.C. Circuit in *United States of America ex rel. Totten v. Bombardier Corporation*, 286 F.3d 542, 551-52 (D.C. Cir. 2002) termed the distinction, for Rule 9(b) purposes, between a fraudulent claim and a false one "hairsplitting." Where the False Claims Act, 31 U.S.C. § 3729, made both claims actionable but required proof of scienter only for the former, the plaintiff argued Rule 9(b) did not apply. The Court disagreed:

> The difference between the two claims is simply the degree of scienter involved. But this difference is entirely insignificant in the context of Rule 9(b)'s pleading requirements. Indeed, the rule specifically allows allegations of intent, knowledge, and other condition[s] of the mind to be averred generally. In contrast, the circumstances that must be pleaded with specificity are matters such as the time, place, and contents of the *false* representations, such representations being the *element* of fraud about which the rule is chiefly concerned.

4

*Id.* (citations and internal quotation marks omitted) (emphases in original). Here, the Commission's burden of proof resembles one for common law fraud except that it need not demonstrate Benning's subjective intent to defraud. *FTC v. Publishing Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1996). To establish individual liability under the Act, the FTC must prove: (1) misrepresentations or omissions; (2) of material fact; (3) of a kind usually relied upon by reasonably prudent persons; (4) that consumer injury resulted; and (5) that the individual participated directly in the acts or practices or had authority to control them. *Id.* at 1170; *FTC v. Amy Travel Service, Inc.*, 875 F.2d 564, 573 (7th Cir. 1989). To recover restitution from an individual, the FTC must also prove "knowledge that the corporation or one of its agents engaged in dishonest or fraudulent conduct." *Publishing Clearing House*, 104 F.3d at 1171 (noting an individual had "knowledge" where he was actually aware of "material representations, was recklessly indifferent to the truth or falsity of a misrepresentation, or had an awareness of a high probability of fraud along with an intentional avoidance of the truth").

As Rule 9(b) particularity is not focused on intent, it would be anomalous to suggest that a section 5 claim is free from Rule 9(b)'s heightened pleading requirement because the FTC need not prove scienter here. The gravamen of the Complaint is that Swish and its agents—motivated by the potential to profit—hoodwinked unwitting loan applicants by inducing payment for a $50 debit card they neither wanted nor considered. The general applicability of Rule 9(b) to section 5 actions is a real prospect. As noted below, however, in this particular context, the outcome for Benning's motion does not turn on that question. Whether or not a section 5 violation "sounds" in fraud, the Commission's allegations against Benning in particular fail to meet the general pleading standard contained in Federal Rule of Civil Procedure 8(a)(2).

B. Federal Rule of Civil Procedure 8(a)(2).

To state a claim for relief, Rule 8(a)(2) demands that a pleading include a "short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court has instructed that this mandate does not require "detailed factual allegations," but "demands more than

5

an unadorned, the-defendant-harmed-me accusation" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Id.* (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Accordingly, dismissal under Rule 12(b)(6) is appropriate where a complaint lacks "sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). When considering a motion to dismiss, a court accepts a plaintiff's factual allegations as true and construes the complaint in the light most favorable to the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). This tenet does not apply, however, to bare legal conclusions. *Twombly*, 550 U.S. at 555 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Even where the plaintiff alleges something more than a bare legal conclusion, *Twombly* requires a statement of a plausible claim for relief. *Id.* at 544. Weighing a claim's plausibility is ordinarily a task well-suited to the district court but, where the well-pleaded facts do not permit the court to infer more than a mere *possibility* of misconduct, the complaint has not shown the pleader is entitled to relief. *Iqbal*, 129 S. Ct. at 1950.

Benning argues the Complaint—insofar as it implicates him—satisfies neither *Twombly*'s requirement of something more than "threadbare" recitations of elements and legal conclusions nor its demand for a plausible claim for relief. As to *Twombly*'s first principle, the only time Benning's name is expressly mentioned in the Complaint, it is to allege:

> Defendant Mark Benning was at all times material to this Complaint the CEO for Defendant Swish. At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Swish, including the acts and practices set forth in this Complaint. Defendant Benning resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

The FTC uses this exact language to describe the actions of defendants Matthew Patterson and Jason Strober. Throughout the Complaint, the FTC does describe in considerable detail the websites

6

No. C 09-03814 RS
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND, DENYING MOTION TO STRIKE

For the Northern District of California

operated by Swish, the relationship between Swish and VirtualWorks, and the circumstances behind the material omission and misrepresentations that comprise Counts I and II. The "factual" allegations alleged against Benning, by contrast, are cursory at best.

Next, even were this Court to accept the Complaint's allegations as well-pleaded, Benning argues it still fails to state a plausible claim for relief. As *Twombly* explains, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 550 U.S. at 556. At the same time, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 129 S. Ct. at 1949 (*quoting Twombly*, 550 U.S. at 556-57). The FTC argues Benning's position as CEO of Swish Marketing makes his involvement in the debit card scheme plausible. For support, the Commission cites to *FTC v. Publishing Clearing House, Inc.*, 104 F.3d 1168, 1170 (9th Cir. 1996), where the Ninth Circuit reviewed the summary judgment of a section 5 violation for deceptive telemarketing. After reciting the elements for individual liability detailed in the foregoing section— proof of corporate liability, plus direct participation in the deceptive acts or authority to control them and some knowledge that the corporation or its agents engaged in deceptive or fraudulent conduct— the Court paused to explain the "authority to control" phrase.

The Court reasoned that "[the defendant's] assumption of the role of president of [the corporation] and her authority to sign documents on behalf of the corporation demonstrate that she had the requisite control." *Id.* The Commission argues that Benning's status as CEO, standing alone, plausibly demonstrates his control over the company (and warrants the inference of involvement in the deception). The Commission ignores that substantial facts were before the Circuit in *Publishing Clearing House* detailing the defendant's relationship not only to the corporation but also to its telemarketing scheme. *Id.* at 1171 ("[Her] activities included obtaining and signing PCH's business license and signing the fund-raising agreement between PCH and [a fraudulent charity whose] application to conduct charitable solicitation identified [her] as the person

No. C 09-03814 RS
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND, DENYING MOTION TO STRIKE

in 'direct charge of conducting the solicitation.'").[1] The Commission's conclusory assertions of authority—untethered to virtually any supportive facts—do not support an inference of Benning's involvement.

As to knowledge, the Commission insists that paragraph twenty-four of its Complaint makes Benning's knowledge plausible: "Consumers filed complaints with VirtualWorks, Defendants, the Better Business Bureau, law enforcement agencies, banks and payday lenders during this period." Additional facts such as the number of consumers who complained directly to Benning, or the size and structure of Swish reflecting senior management involvement might render any amended complaint adequate. As *Amy Travel* explained, "the degree of participation in business affairs is probative of knowledge." 875 F.2d at 574. In any event, as currently constituted the complaint presents virtually no facts to tie Benning to the debit card scheme or to suggest his knowledge moves from the conceivable to the plausible. In light of the Commission's broad investigatory power and its ability to obtain discovery prior to the commencement of this litigation, requiring it to advance some factual connection between Benning and the alleged deceptive acts should not represent an unreasonable or impractical expectation.

C. <u>Ancillary Monetary Relief.</u>

Federal Rule of Civil Procedure 12(f) provides that a "court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "[T]he function of a [Rule] 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." *Sidney-*

---

[1] *See, e.g.*, *FTC v. Freecom Commc'ns, Inc.*, 401 F.3d 1192, 1205 (10th Cir. 2005) (finding individual defendant liable where evidence of frequent meeting attendance, final control over all senior hiring and marketing campaigns, and status as controlling shareholder of a closely held corporation supported inference of authority to control corporate defendant); *Amy Travel*, 875 F.2d at 575 (finding "clear" evidence of defendants' authority and involvement where they "were the principal shareholders and officers of the corporations," "created the businesses, opened new ones, wrote telemarketing scripts, and hired personnel" and "controlled the financial affairs of the companies and reviewed the sales reports and other information"); *FTC v. Innovative Mktg., Inc.*, 654 F. Supp. 2d 378, 387 (D. Md. 2009) (accepting FTC's pleadings against individual where complaint "specifically allege[d]" CEO "personally handled" finances and the $3.3 million spent on fraudulent advertising was directly traceable to his personal credit card).

*Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). Properly executed, a motion to strike streamlines a judge's inquiry by focusing his or her attention only on the "real issues in the case." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994). It eliminates from consideration that which "can have no possible bearing on the subject matter of the litigation."[2] *Naton v. Bank of California*, 72 F.R.D. 550, 552 n.4 (N.D. Cal. 1976).

The FTC seeks a permanent injunction under the Act's section 13(b), 15 U.S.C. § 53(b) (1994), and restitution ancillary to this equitable relief. Swish argues that a district court does not have authority to order restitution under a statute that expressly provides only for a preliminary or permanent injunction and moves to strike from the Complaint any reference to monetary relief. Swish buoys its argument that section 13(b) does not contemplate restitution by reference to another section under the Act that does. Section 19 grants a district court jurisdiction to craft a broad equitable remedy in one of two circumstances: (1) a defendant violates any Commission rule and engages in an unfair or deceptive practice that also violates section 5; or (2) a defendant engages in any unfair or deceptive practice in violation of a Commission cease-and-desist order and the Commission satisfies the Court that a reasonable person under the circumstances would perceive the practice as unfair or deceptive. 15 U.S.C. § 57b(a) (1975). The section then outlines the available remedies:

> (b) Nature of relief available
>
> The court in an action under subsection (a) of this section shall have jurisdiction to grant such relief as the court finds necessary to redress injury to consumers or other persons, partnerships, and corporations resulting from the rule violation or the unfair or deceptive act or practice, as the case may be. Such relief may include, but shall

---

[2] The parties agree that this Court's ability to fashion an equitable remedy under section 13(b) is a "real" issue. Swish reasons that *should* the Court agree that 13(b) does not contemplate monetary relief, the motion to strike would indeed "narrow" the inquiry to whether a permanent injunction is warranted. The Commission insists that Swish's request exceeds the scope of Rule 12(f). The Commission calls Swish's claim "substantive," "disputed" and contrary to "three decades of legal bedrock." *See McArdle v. AT&T Mobility, LLC*, No. 09-1117, 2009 U.S. Dist. LEXIS 89231, at *24-25 (N.D. Cal. Sept. 14, 2009) (courts are reluctant to determine disputed or substantial issues of law on a motion to strike affirmative defense).

9

No. C 09-03814 RS
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND, DENYING MOTION TO STRIKE

> not be limited to, rescission or reformation of contracts, the refund of money or return of property, the payment of damages, and public notification respecting the rule violation or the unfair or deceptive act or practice, as the case may be; except that nothing in this subsection is intended to authorize the imposition of any exemplary or punitive damages.

Extrapolating from the differences between these two sections, Swish argues that sections 13 and 19 comprise a complete and "elaborate regulatory scheme" whereby section 13 provides only interim relief until the Commission has sufficient time, first, to complete either the rulemaking or adjudication required by section 19 and, second, to seek a remedy in district court for continuing violations. Where a district court grants a permanent injunction with an ancillary award for restitution or disgorgement, Swish suggests, it takes an impermissible shortcut.

In *FTC v. H.N. Singer, Inc.*, 668 F.2d 1107 (9th Cir. 1982), the Ninth Circuit reviewed a district court's preliminary injunction order on the grounds that its award of an accompanying asset freeze was not expressly authorized under the FTC Act. The Court reasoned that there were two jurisdictional bases on which to ground the injunction: sections 13(b) and 19. The Court first likened the asset freeze to the "old equitable remedy" of rescission. *Id.* at 1112. "Because the authority to issue a preliminary injunction rests upon the authority to give final relief," the Court reasoned, "the authority to freeze assets by a preliminary injunction must rest upon the authority to give a form of final relief—[rescission of contract and restitution]—to which the asset freeze is an appropriate provisional remedy." *Id.* The Court further noted that section 13(b) gave the Commission power to fashion complete equitable relief.

In *Singer*, the court relied heavily on two Supreme Court decisions interpreting a district court's remedial power when sitting in equity. In *Porter v. Warner Holding Co.*, 328 U.S. 395 (1946), a case reviewing an injunctive provision in the Price Control Act ("EPCA"),[3] the Court held that when Congress invokes the district court's equitable jurisdiction in a statute, "all the inherent

---

[3] *Porter* analyzed a court's power under the EPCA, 50 U.S.C. § 925(a) (1942), to order restitution of rents collected in excess of permissible maximums. 328 U.S. at 396. The Act provided that the Administrator could, where any person "has engaged in or is about to engage in" a violation of the Act, "make application to the appropriate court for an order enjoining such acts or practices, or for an order enforcing compliance with such provision . . . [and] a permanent or temporary injunction, restraining order, *or other order* shall be granted without bond." § 925(a) (emphasis added).

10

equitable powers of the district court are available for the proper and complete exercise of that jurisdiction." *Id.* at 398. Moreover, where the statute serves the public interest, "those equitable powers assume an even broader and more flexible character . . . ." *Id.* If the public interest would be so served, the district court "may act so as to adjust and reconcile competing claims and so as to accord full justice to all the real parties in interest," and "may go beyond the matters immediately underlying its equitable jurisdiction and decide whatever other issues and give whatever other relief may be necessary . . . ." *Id.*

Comprehensive equitable power resides in the district court, *Porter* reasoned, absent "a clear and valid legislative command." *Id.* Indeed, "[u]nless a statute in so many words, or by necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied." *Id.* More than a decade later, the Court in *Mitchell v. Robert De Mario Jewelry, Inc.*, 361 U.S. 288 (1960), pushed *Porter*'s analysis further. When interpreting the Fair Labor Standards Act ("FLSA"),[4] the Court theorized that Congress acts against the backdrop of the district court's equitable power: "[w]hen Congress entrusts to an equity court the enforcement of prohibitions contained in a regulatory enactment, it . . . act[s] cognizant of the historic power of equity to provide complete relief in the light of statutory purposes." *Id.* at 291-92.

In *Singer*, the Court reviewed a district court's ability to order restitution under section 13(b), applied the instructions from *Porter* and *Mitchell*, and declared: "We hold that Congress, when it gave the district court authority to grant a permanent injunction . . . also gave the district court authority to grant any ancillary relief to accomplish complete justice because it did not limit that traditional equitable power explicitly or by necessary and inescapable inference." *Singer*, 668 F.2d at 1113. *Singer* rejected Swish's argument that section 19, which explicitly vests the district court with power to award restitution, restricts the injunctive relief provided in section 13(b). The

---

[4] The challenged section gave district courts jurisdiction "for cause shown, to restrain violations of section 15, Provided, That no court shall have jurisdiction, in any action brought by the Secretary of Labor to restrain such violations, to order the payment to employees of unpaid minimum wages or unpaid overtime compensation or an equal amount as liquidated damages . . . ." 29 U.S.C. § 217 (1938). *Mitchell* also insisted that the applicability of the *Porter* principle was "not to be denied . . . because . . . having set forth the governing inquiry, [*Porter*] went on to find in the language of the statute affirmative confirmation of the power to order reimbursement." *Mitchell*, 361 U.S. at 291.

11

Court cited section 19's savings clause: "Remedies provided in this section are in addition to, and not in lieu of, any other remedy or right of action provided by State or Federal law." *Id.*

Swish asks this Court to limit the applicability of *Singer*; the defendants characterize *Singer*'s 13(b) analysis as dicta and argue that this Court need not follow it here. It is this particular portion of *Singer*'s analysis, though, that the Ninth Circuit has cited with favor—and to which district courts have loyally adhered—for nearly three decades. *See, e.g.*, *FTC v. Pantron I Corp.*, 33 F.3d 1088, 1102 (9th Cir. 1994) (citing *Singer* for the proposition that a district court may award monetary relief under section 13(b)); *FTC v. Silueta Distribs., Inc.*, No. 93-4141, 1995 WL 215313, at *7-8 (N.D. Cal. Feb. 24, 1995) (citing both *Singer* and *Pantron I* and ordering disgorgement under section 13(b)). This Court is not free to parse or limit *Singer* unless and until so directed by governing appellate authority.

Swish contends that just such intervening authority can be found in *Meghrig v. K.F.C. Western, Inc.*, 516 U.S. 479 (1996). *Meghrig* held that the grant of general equity jurisdiction under the citizen-suit provision of the Resource Conservation and Recovery Act ("RCRA") did not authorize restitution for past toxic cleanup costs.[5] *Id.* at 481. Central to the Court's holding was its conclusion that RCRA was not "principally designed to effectuate the cleanup of toxic waste sites or to compensate those who have attended to the remediation of environmental hazards." *Meghrig*, 516 U.S. at 483. Instead, RCRA's primary purpose was to "reduce the generation of hazardous waste" and to ensure proper treatment of existing waste to minimize present and future harm. *Id.* Upon a showing that toxic waste presented an "imminent and substantial" hazard, a private party suing under section 6972(a) could seek only an injunction: (1) ordering a responsible party to "clean up" the waste; or (2) "restraining" a responsible party from any future RCRA violation. *Id.* at 484-85. Neither, the Court insisted, included repayment for *past* (*i.e.*, no longer "imminently" hazardous) cleanups.

---

[5] The provision provided that "[t]he district court shall have jurisdiction . . . to restrain any person who has contributed or who is contributing to the past or present handling . . . of any solid or hazardous waste . . . [or] to order such person to take such other action as may be necessary, or both . . . ." 42 U.S.C. § 6972(a) (1976).

12

To support its conclusion, *Meghrig* drew a comparison between RCRA's citizen-suit provision and its analogue in the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), an environmental statute aimed at ameliorating, preventing and *compensating* for harm from hazardous wastes. CERCLA differed from RCRA, the Court reasoned, in its purpose and the remedies it provided. Specifically, CERCLA's citizen-suit provision also tasked Article III courts with remedying violations of CERCLA's provisions but expressly allowed "any person [to] seek contribution from any other person who is liable." 42 U.S.C. § 9613(f)(1). In language now heavily relied upon by Swish, the Court explained: "[w]here Congress has provided 'elaborate enforcement provisions' for remedying the violation of a federal statute, it cannot be assumed that Congress intended to authorize by implication additional judicial remedies for private citizens suing under the statute." *Meghrig*, 516 U.S. at 487-88. "It is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *Id.* at 488.

*Meghrig* did not, however, overrule *Porter* and *Mitchell*. Indeed, the Court continues to cite *Porter* with approval. *See, e.g.*, *United States v. Oakland Cannabis Buyers' Co-op.*, 532 U.S. 438, 496 (2001) (relying on *Porter* for the proposition that district courts sitting in equity have discretion to craft a fitting remedy "unless a statute clearly provides otherwise"); *Miller v. French*, 530 U.S. 327, 340-41 (2000) (same). In *United States v. Rx Depot*, 438 F.3d 1052, 1056 (10th Cir. 2006), the Tenth Circuit characterized RCRA as "a statute that fit into the exceptions recognized by *Porter* and *Mitchell*" if only because the Court discerned in it a "clear legislative command" precluding restitution. Swish does not dispute that *Porter* and *Mitchell* remain good law but construes from *Meghrig* a working standard for a "clear legislative command." Specifically, Swish argues that the *Meghrig* analysis controls where: (1) Congress provides "elaborate enforcement provisions" in a statutory scheme; and (2) the express statutory remedies it includes are "forward-looking."

In support of the first factor, Swish dedicates much of its argument to demonstrating legislative intent that sections 13(b) and 19 "work *together* as a statutory plan for the protection of the public." Because Congress expressly provided for restitution in section 19, Swish contends that

13

this Court may not "read" it into section 13(b). *Singer* held, however, that Congress *did not* actually intend for sections 13(b) and 19 to operate always in tandem. While section 13(b) may provide temporary relief pending a section 19 action, Congress also expressly provided for permanent relief in lieu of the more cumbersome administrative processes required by section 19. *Singer*, 668 F.2d at 1110.

Swish makes the apt counter that the procedural protections expressly contemplated in section 19 are notably absent in section 13(b). Swish contends that when Congress provides for a monetary remedy, it vests defendants with procedural protection. Only section 19 expressly contemplates "the refund of money or return of property" and the "payment of damages" and includes a three-year statute of limitations. 15 U.S.C. § 57b(b) & (d). In *Meghrig*, Justice O'Connor emphasized that only CERCLA expressly provided for recovery of remediation costs, contained a statute of limitations, and imposed a reasonability requirement on remediation awards. *Meghrig*, 516 U.S. at 486 ("If Congress had intended [section] 6972(a) to function as a cost-recovery mechanism, the absence of these provisions would be striking."). *Cf. United States v. Phillip Morris*, 396 F.3d 1190, 1200-01 (D.C. Cir. 2005) (refusing to award disgorgement under civil RICO provision where similar remedy was available in criminal forfeiture provision but accompanied by proof beyond a reasonable doubt burden and five-year statute of limitations). Even so, the existence of procedural protections in combination with express monetary remedies elsewhere in the EPCA did not deter the Court in *Porter*. 328 U.S. at 406.

Second, Swish argues that the FTC Act's language, like RCRA's, is "forward looking" and does not contemplate a "backward looking" remedy like disgorgement or restitution. While the EPCA (reviewed in *Porter*) directed courts to enjoin any person who "*has engaged* in or is about to engage in" a violation, the FTC Act contemplates the restraining of any person who "is violating or is about to violate" section 5. Section 13(b) speaks only in the present and future tenses. Although the appellate courts do not appear to have published guidance on section 13(b) in light of *Meghrig*, circuit courts that have considered *Meghrig*'s "forward looking" rationale have not consistently treated it as dispositive. *Compare Rx Depot*, 438 F.3d at 1058 (refusing, even where statute's

language was "forward-looking," to apply *Meghrig* or to restrict district court's power to order restitution under the FDCA); *with Phillip Morris*, 396 F.3d at 1192 (characterizing civil RICO provision's grant of equity jurisdiction as "forward-looking" and then applying *Meghrig*).

Moreover, *Meghrig* relied on other factors not at issue here. The Court recognized that, structurally, cleanup costs would have worked as an awkward remedy under RCRA. The statute prohibited citizen-suits when either the EPA or the State commenced a separate enforcement action. 42 U.S.C. § 6972(b)(2)(B) & (C). If RCRA provided for restitution under its citizen-suit provision, only those parties whose waste problems were not so severe as to attract the attention of the agency or government could seek compensation. *Meghrig*, 516 U.S. at 486 (terming this possibility "wholly irrational"). Second, *Meghrig*'s holding was narrow: Congress did not intend for *private* citizens to recover past cleanup costs under RCRA's citizen suit provision. *Porter* instructed that the district court's "equitable powers assume an even broader and more flexible character" in enforcement actions designed to serve the public interest. *Porter*, 328 U.S. at 398. Reasonable minds may differ as to whether the FTC Act is more analogous to RCRA / CERCLA or to the EPCA / FLSA. In any event, *Meghrig* does not render *Singer* either unreliable or less binding.

## III. CONCLUSION

The FTC's Complaint fails to establish a factual nexus between Benning and the corporate defendant's alleged misrepresentations and omissions and cannot satisfy Rule 8(a)(2)'s requirement of a "short and plain statement showing that the pleader is entitled to relief." The defendant's motion to dismiss is therefore granted with leave to amend. Next, in light of its reading of *Singer*'s instruction that a district court sitting in equity has authority to grant ancillary monetary relief under section 13(b), and the subsequent reliance on *Singer* for this proposition by myriad courts, neither *Meghrig* nor other binding case authority warrant a refusal by this Court to follow Circuit precedent. The defendants' motion to strike therefore is denied.

IT IS SO ORDERED.

Dated: 02/22/2010

_____
RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE